**STRADLEY RONON STEVENS & YOUNG, LLP**
Andrew I. Hamelsky, Esq. (N.J. Attorney ID No.: 045111994)
Sabina Corrado, Esq. (N.J. Attorney ID No. 319102019)
One Riverfront Plaza
1037 Raymond Blvd., Suite 920
Newark, New Jersey 07102
T: (862) 682.7246
F: (862) 682.7263
*Attorneys for Plaintiff Caerus Media LLC*

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

------------------------------------------------------------------------x

CAERUS MEDIA LLC.,

                  Plaintiff,

       -against-

GRAY HARBOR HOLDINGS L.L.C d/b/a GRAY
HARBOR DIGITAL and/or d/b/a GRAY HARBOR
CONSULTING, GRAY HARBOR PUBLISHING LLC
d/b/a GRAY HARBOR DIGITIAL and/or d/b/a GRAY
HARBOR CONSULTING, and BRETT HOUCK

                  Defendants,

------------------------------------------------------------------------x

Civil Action No.:1:25-cv-01120

**FIRST AMENDED**
**COMPLAINT**

Plaintiff, Caerus Media LLC ("Plaintiff" or "Caerus Media"), by and through its attorneys,

Stradley Ronon Stevens & Young, LLP, brings this action against Gray Harbor Holdings L.L.C.

d/b/a Gray Harbor Digital and/or d/b/a Gray Harbor Consulting, Gray Harbor Publishing LLC

d/b/a Gray Harbor Digital and/or d/b/a Gray Harbor Consulting (collectively "Gray Harbor"), and

Brett Houck ("Houck") (collectively, "Defendants"). Plaintiff alleges and states as follows:

**NATURE OF THE ACTION**

1.      The foundation of this lawsuit rests on two core issues: First, Defendants' failure

to comply with their contractual obligations to pay hundreds of thousands of dollars due to Plaintiff

Caerus Media for online advertising and marketing services that it provided to Defendants in

connection with Gray Harbor's participation as an "affiliate" for the Capital One Shopping browser extension. And then, Defendants' subsequent fraudulent behavior which was intended for the sole purpose of avoiding liability for the breach of their contractual obligations.

2.     The Capital One Shopping browser extension is a browser plugin, website, and mobile app that offers e-commerce comparison shopping and cash back at online retailers.

3.     Essentially, it is a software program that acts as a coupon browser extension, which is meant to help shoppers find and apply coupon codes and cash back offers when they shop online. Coupon browser extensions are widely used and help shoppers save money and get the best deal.

4.     Gray Harbor entered into an affiliate agreement with Capital One wherein it agreed to promote the Capital One Shopping browser extension on their platform (social media, blogs, websites, and other virtual platforms.). In exchange, Gray Harbor would receive a commission for each consumer that downloaded the Capital One Shopping browser extension using the unique affiliate link provided to Gray Harbor for the browser extension (the "Capital One/Gray Harbor Affiliate Link").

5.     Capital One was Gray Harbor's sole and/or primary customer, generating Gray Harbor's largest source of income.

6.     In order to increase its commissions from Capital One, Defendants entered into an agreement with Plaintiff Caerus Media wherein Caerus Media was to provide Defendants with online marketing and advertising services for the purpose of driving consumers to the Capital One/Gray Harbor Affiliate Link and downloading the browser extension.

7.     Caerus Media was highly successful in directing traffic to the Capital One/Gray Harbor Affiliate Link and its efforts generated a large consumer base downloading the Capital One Shopping browser extension.

2

8.     In fact, at the peak of Caerus Media's business relationship with Defendants, Caerus Media was generating over $500,000 of commissions per month to Gray Harbor for users downloading the Capital One Shopping browser extension.

9.     Moreover, between 2022 and 2024, Gray Harbor generated millions of dollars in revenue from Capital One, which was largely due to the lucrative marketing services provided to Defendants by Plaintiff.

10.     In exchange for Caerus Media's marketing services, the parties agreed that Defendants were to remit ninety (90) percent of the commissions it received from Capital One as a result of Caerus Media's services.

11.     Defendant Houck personally guaranteed Defendants' payment obligations under the agreement with Plaintiff as it was expressly understood by the parties that Houck derived a personal financial benefit from the services provided by Plaintiff.

12.     In fact in 2024, as well as other times, the majority of payments for Plaintiff's marketing services, were *directly* from Houck's personal bank accounts rather than from any Gray Harbor business account.

13.     Nevertheless, although payment from Defendants was rarely timely, between June 30, 2022 until April 30, 2022, Defendants generally remitted the agreed upon payments to Plaintiff on a monthly basis from on or around June 30, 2022 until April 30, 2024.

14.     After that point, Defendants unjustifiably ceased making payments due to Caerus Media.

15.     For months after, Defendants made fraudulent promises to Plaintiff that payment would be forthcoming in order to continue to receive Caerus Media's lucrative marketing services,

3

which at that time continued to direct a large host of consumers to the Capital One/Gray Harbor Affiliate Link, and, in turn, led to Defendants receiving substantial commissions from Capital One.

16.     Unbeknownst to Plaintiff, however, during this time frame Defendants were dissipating the funds received from Capital One for Plaintiff's services including, *inter alia*, by selling a large portion of the accounts receivables due from Capital One to an outside entity in exchange for a large sum of money.

17.     In July of 2024, after months of not receiving payment, the parties' business relationship reached a critical point where Plaintiff Caerus Media was forced to engage counsel for the purpose to initiating litigation against Defendants for an outstanding balance of almost $900,000.00.

18.     Faced with the threat of litigation, in August of 2024, Defendants entered into an agreement with Plaintiff providing that the entirety of the balance due would be paid by September 6, 2024.

19.     However, Defendants never intended to complete payments for the outstanding amounts due and only wanted to deter Plaintiff from initiating litigation while they continued to fraudulently waste and misappropriate funds and commissions it received from Capital One as a result of Caerus Media's services, as well as other Gray Harbor assets, in order to make themselves litigation proof.

20.     In fact, in another pending lawsuit against Defendants, Houck admitted that in August of 2024, Gray Harbor had lost its largest customer, Capital One, and that at the time Houck was planning to dissolve Gray Harbor altogether.

21.     Since then, Houck has transferred all of Gray Harbor's assets to himself and/or other entities.

7576485v.2

22.     According to Houck, Gray Harbor is no longer operational and only exists so that he can bring a lawsuit on the company's behalf against his former partner.

23.     It is quite clear that Houck never intended to satisfy Defendants' debt to Plaintiff, but rather sought to buy enough time so that he could dissipate the entirety of Gray Harbor's assets and place them out of Plaintiff's reach in this lawsuit.

24.     In furtherance of this plan, Defendants made a minimal percentage of the amount due in August and September of 2024, from Houck's personal bank accounts, and then for several weeks thereafter continued to fraudulently represent that Defendants would make payments due while simultaneously misappropriating the commissions received from Capital One and depleting Defendants' assets.

25.     For example, in July and August of 2024, Defendants transferred the proceeds of Gray Harbor's accounts receivables to other persons or business entities.

26.     And around August of 2024, Defendants transferred approximately $246,000 to bank accounts held by Defendant Houck personally, as well as other non-merchant bank accounts.

27.     Since September 6, 2024, Defendants have not remitted any further payments to Plaintiff Caerus Media for invoices dated between April 30, 2024 through to July 30, 2024. A balance of $680,958.20 continues to be due and outstanding. Plaintiff is entitled to this amount plus costs, disbursements, interest, attorneys' fees, and all other fees incurred as a result of Defendants' default of their payment obligations.

28.     Plaintiff Caerus Media brings this action in order to recover the outstanding balance due from Defendants for the successful online marketing and advertising services that it unequivocally provided to Defendants in connection with the Capital One Shopping browser extension.

7576485v.2

## THE PARTIES

29.     Plaintiff Caerus Media is a company duly organized and existing under the laws of the State of Delaware, with its principal place of business located at 8 the Grn Ste 8070 Dover, Delaware.

30.     The shareholders and members of Caerus Media are Tyler and Sara Eeds, who are citizens of and domiciled in the State of Arizona.

31.     Upon information and belief, Defendant Brett Houck is a citizen of and domiciled in the State of New Jersey, residing at 317 83rd Street, Unit 5, Stone Harbor, NJ 08247.

32.     Upon information and belief, Defendant Gray Harbor Holdings L.L.C., d/b/a Gray Harbor Digital and/or d/b/a Gray Harbor Consulting, is limited liability organized and existing pursuant to the laws of the State of New Jersey, with its principal place of business located at 359 96th 203, Stone Harbor, New Jersey 08247.

33.     Upon information and belief, Defendant Houck, who is a citizen of and domiciled in the State of New Jersey, is the sole member and shareholder of Gray Harbor Holdings L.L.C.

34.     Defendant Gray Harbor Publishing LLC, d/b/a Gray Harbor Digital and/or d/b/a Gray Harbor Consulting, is a foreign limited liability organized and existing pursuant to the laws of the State of New Jersey, with its principal place of business located at 359 96th 203, Stone Harbor, New Jersey 08247.

35.     Upon information and belief, Defendant Houck, who is a citizen of and domiciled in the State of New Jersey, is the sole member and shareholder of Gray Harbor Publishing LLC.

## JURISDICTION AND VENUE

7576485v.2

36.     This Court has diversity-based subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1), as this is a dispute between citizens of different states, and as the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

37.     Pursuant to 28 U.S.C. § 1391, venue is proper in this jurisdiction because each Defendant is a citizen of and/or resides in the State of New Jersey.

## FACTUAL BACKGROUND

### The Capital One Shopping Browser Extension

38.     Upon information and belief, around 2018, Capital One acquired a cashback rewards startup and browser extension from "Wikibuy," which was rebranded as the Capital One Shopping browser extension.

39.     The Capital One Shopping browser extension is advertised to be a free tool that helps shoppers save money using native cloud-based real-time savings analysis. Upon information and belief, the extension uses automated cross-site price comparisons while consumers shop, proactively locating and applying valuable active coupon codes at checkout and providing product price and tracking alerts.

40.     Coupon extensions platforms, such as the Capital One Shopping browser extension, are widely used to help shoppers find and apply coupon codes and cashback offers when they shop online. These coupon extensions also help eCommerce merchants turn more visitors into buyers and increase the website's conversion rates.

41.     Importantly, the Capital One Shopping browser extension is not limited to its base of credit card or account holders, which allows for a large consumer base to utilize the extension.

7

42.     With the rise of e-commerce and the rising popularity of social media platforms, some retailers, such as Capital One, have turned to online marketers to promote and market their products to consumers.

43.     Specifically, in addition to its own marketing and promotional efforts, Capital One also implemented an "affiliate" program wherein affiliates promoted the Capital One Shopping browser extension by sharing it with their audience through various marketing channels such as blogs, social media, videos, etc., and earned a commission for each new user who installed the extension and made a purchase through their unique affiliate link.

44.     Affiliate links are web-based hyperlinks that direct consumers to a website where they can purchase the product or service being promoted by a website or online marketer.

45.     Essentially, "affiliates" for the Capital One Shopping browser extension, act as online marketers for the browser extension, by driving traffic and sign-ups for the browser extension, in exchange for receiving a commission for each referral.

When a user clicks on an online marketer's affiliate link, installs the extension, and makes a purchase through it, the affiliate earns a commission based on the installation of the browser extension.

### The Capital One/Gray Harbor Affiliate Link

46.      Gray Harbor was formed on or around 2017, and its sole owner is Defendant Houck.

47.     Gray Harbor is an advertising services company in the business of digital lead generation.

8

7576485v.2

48.     Upon information and belief, when Capital One initially launched the Capital One Shopping browser extension, it utilized only a limited number of affiliates to promote the browser extension.

49.     Upon information and belief, Gray Harbor was one of the initial affiliates for the Capital One Shopping browser extension.

50.     Upon information and belief, Gray Harbor entered into an agreement with Capital One wherein it would act as an online marketer which directed consumers to the unique Capital One/Gray Harbor Affiliate Link through their marketing efforts.

51.     Upon information and belief, in exchange, Gray Harbor was to receive a commission for each consumer which downloaded the Capital One Shopping browser extension using the Capital One/Gray Harbor Affiliate Link.

52.     Capital One was Gray Harbor's primary customer generating the largest source of income between mid-2022 and mid-2024.

**Agreement between Caerus Media and Defendants**

53.     Caerus Media is an online marketing company which, among other things, has experience with amplifying its clientele's digital products by combining cutting-edge marketing strategies with data insights.

54.     On or around April of 2022, a business affiliate of Defendant Houck, Mitchell Richler, approached Caerus Media in connection with providing his employer, Avanquest, online marketing services for its promotion of the Capital One Shopping browser extension.

55.     Upon information and belief, Defendant Houck was affiliated with the company Avanquest in some manner.

7576485v.2

56.    On or around June of 2022, Defendant Houck and Mitchell Richler informed Plaintiff that Gray Harbor would be taking Avanquest's place as an affiliate in the program for the Capital One Shopping browser extension.

57.    Upon information and belief, Mitchell Richler was a contractor of Defendants Houck and/or Gray Harbor.

58.    Beginning on or around June of 2022, Caerus Media dealt with Defendants Houck and Gray Harbor in connection with its promotion of the Capital One Shopping browser extension and payments due thereunder.

59.    Pursuant to the parties' agreement, Caerus Media would engage in a campaign to direct consumers to the Capital One/Gray Harbor Affiliate Link.

60.    In exchange, Caerus Media was to receive ninety (90) percent of the commissions that Gray Harbor received from Capital One for each user that downloaded the browser extension as a result of Caerus Media's marketing efforts.

61.    Gray Harbor was willing to take only a ten (10) percent margin on the profits because Caerus Media put up the marketing capital to deliver the installations of the browser extension and the commissions were a result of Caerus Media's sole efforts.

62.    Essentially, Defendants were to keep (10) percent of the commissions from Capital One as compensation for the relationship and agreement they maintained with Capital One as an affiliate for the Capital One Shopping browser extension at the time.

63.    The parties at all times understood that Defendant Houck derived personal financial benefit from Plaintiff's services with respect to the Capital One Affiliate Link.

64.    As such, Defendant Houck personally guaranteed all of the amounts due for Caerus Media's services. In fact on numerous occasions, when Plaintiff was forced to follow up on late

payments, Defendant Houck represented that he would make Plaintiff "whole" and made payments due from his personal bank account.

65.     Indeed for the majority of 2024, each payment remitted to Plaintiff for its services were remitted from Houck's personal bank accounts rather than from any Gray Harbor business account.

66.     Moreover, communications with Houck with respect to Plaintiff's services were often via text message.

67.     Quite often, Houck would text Plaintiff from his personal phone number with respect to increasing customer traffic to the Capital One Affiliate Link so that he could increase his revenues.

68.     Such communications were often outside normal business days or hours, and spanned all hours of the day.

69.     It was always understood that any decreases or increases in consumer traffic to the Gray Harbor Affiliate Link affected Houck personally as his personal income was largely dependent on the commissions received from Capital One.

70.     In fact, upon information and belief, the majority of Houck's personal income is attributable to the Capital One business relationship and, in turn, attributable to Plaintiff's services, at least in some capacity. Accordingly, Defendants Gray Harbor and Brett Houck were unequivocally parties to the agreement with Caerus Media, with the express understanding that Defendant Houck personally benefited from the agreement and guaranteed all payments due to Caerus Media.

11

71.    In order to track the precise amount of consumers that downloaded the Capital One Shopping browser extension as a result of Caerus Media's online marketing efforts, Caerus Media utilized several tracking platforms (such as Everflow and Impact).

72.    At its most successful period, Caerus Media generated approximately $500,000.00 of commissions from Capital One to Gray Harbor per month.

73.    In 2022, when the parties begun their business relationship, Defendants were receiving approximately $27 per download from Capital One, which gradually increased throughout the years, with a peak of approximately $49.50 per download in 2024.

74.    Capital One increased the commission per download to Gray Harbor because it was impressed with the quality of consumers downloading the browser extension as a result of Caerus Media's marketing efforts.

75.    Between mid-2022 to mid-2024, Defendants generated millions of dollars from Capital One.

76.    Every month, after analyzing and tracking the data concerning downloads, Caerus Media sent Defendants an invoice detailing the downloads of the browser extension resulting from Caerus Media's marketing efforts and calculating the amount due to Caerus Media for that month.

77.    Invoices were to be paid within thirty (30) days of receipt.

78.    Defendants rarely paid the amounts due within the thirty (30) day agreed upon period, which often forced Plaintiff to follow-up with Defendants on the status of payment.

79.    However, Plaintiff's follow-up efforts for payment generally resulted in payment to Caerus Media within a sixty (60) day period of the invoice date, often from Houck's personal bank account, until April of 2024.

80.   Around April of 2024, Defendants outstanding balances began to accrue significantly with little to no payment being received.

81.   In order to continue to receive Caerus Media's lucrative marketing services, which were continuing to generate a significant amount of commissions to Gray Harbor per month, Defendants made hosts of excuses for their failure to make the agreed upon payments including, but not limited to asserting a lack of funds, and fraudulently representing that payments would be forthcoming shortly.

82.   However, unbeknownst to Plaintiff, during this same time period, in May of 2024, Gray Habor sold a significant portion of its account receivables to RDM Capital Funding, LLC d/b/a FinTap ("RDM") in exchange for a large sum of money.

83.   Specifically, Gray Harbor sold approximately $521,250.00 of its accounts receivables to RDM in exchange for the purchase price of $375,000 which was to be repaid in weekly amounts.

84.   In May of 2024, Gray Harbor's sole customer was Capital One.

85.   As such, at least some portion of Gray Harbor's future receivables were a result of Plaintiff's services pursuant to the agreement between the parties.

86.   Yet, at the same time that Defendants were promising payment to Plaintiff of the balances due in order to continue to receive Plaintiff's lucrative services, Defendants had sold of income that was due to Plaintiff in exchange for an immediate sum of money for themselves.

87.   Moreover, despite receiving a large sum of money from RDM, Defendants did not utilize the funds to remit the balance due to Plaintiff but rather misappropriated it.

7576485v.2

88.     These fraudulent misrepresentations continued for months until Plaintiff reach its boiling point in July of 2024, and was forced to threaten legal action against Defendants due to an outstanding balance of approximately $885,958.20 due at that time.

89.     Faced with the threat of litigation, in August of 2024, Defendants represented that they would resume making payments due to Caerus Media again.

90.     On or around August 20, 2024, upon Plaintiff's receipt of a payment for approximately $180,000.00 of the amount due from Defendant Houck's personal bank account, the parties agreed that Plaintiff would accept a total of $520,000, in lieu of the entire $885,958.20 due, if payment of the full balance was received by September 6, 2024, in order to conclusively resolve the matter. Pursuant to the parties' agreement, a balance of approximately $340,000 remained.

91.     However, Defendant did not intend to remit the remainder of the balance due to Plaintiff, but rather intended to deter Plaintiff from litigation while Defendants wasted and misappropriated the funds and commissions received from Capital One and, ultimately, depleted Defendants' assets.

92.     In fact, in another lawsuit, Defendant Houck testified that in July of 2024, Gray Harbor lost its largest asset, the Capital One account, and had begun discussing the dissolution of Gray Harbor with its attorneys.

93.     Notably, Defendants did not inform Plaintiff that it had lost its primary source of income at the time they falsely represented that the remainder of the balance would be paid by September 6, 2024.

94.     Moreover, even more notably, on August 5, 2024, Defendants received $1,618,605.26 in Capital One receivables and on September 3, 2024, Defendants received $328,401.26 in Capital One receivables, which were the last of the Capital One receivables.

95.     These last payments from Capital One to Defendants reflected commissions due for Plaintiff's services.

96.     The amount paid to Defendants was more than sufficient to satisfy the entire remaining balance due to Plaintiff.

97.     However, Defendants did not remit the full balance due to Plaintiff Caerus Media by September 6, 2024. Instead, after multiple follow-ups for payment, on September 6, 2024, Defendants made one final payment of $25,000 from Defendant Houck's personal bank account and then, in October of 2024, Defendants directed Plaintiff to its counsel in connection with the outstanding amounts due.

98.     Moreover, between August and October of 2024, in an effort to continue to deter Plaintiff's legal action against Defendants, Defendants continued to fraudulently represent that payments of the balance due would be shortly forthcoming when, in fact, Defendants were taking actions that make it clear they had no intention of remitting the balance due to Plaintiff.

99.     For example, in July and August of 2024, Defendants transferred the proceeds of their accounts receivables to other persons or business entities related to Houck and/or owned by Houck.

100.     Moreover, around August of 2024, Defendants transferred not less than $246,000 to bank accounts held by Houck personally and other non-merchant bank accounts.

101.     Notably, at no point did Defendants object to the amounts due or express any dissatisfaction with the services provided to Defendants by Caerus Media.

15

102.    Additionally, as stated, upon information and belief, Defendants received the commissions resulting from Caerus Media's services from Capital One for the months of April 2024 through to July 2024.

103.    Nonetheless, as stated, Defendants did not remit the full balance due to Plaintiff Caerus Media by September 6, 2024.

104.    As a result of Defendants' failure to pay the agreed upon balance to Plaintiff in the agreed upon timespan, the parties agreement to reduce the amount due to Caerus Media is void.

105.    Accordingly, Defendants currently owe Caerus Media a total of $680,958.20 for the following invoices:

 a)  Invoice #2372 (April 30, 2024): $14,676.50

 b)  Invoice #2379 (May 31, 2024): $332,759.70

 c)  Invoice #2402 (June 30, 2024): $268,501.95

 d)  Invoice #2419 (July 31, 2024): $62,020.06

A true and correct copy of the invoices due is attached hereto as **Exhibit 1.**

## FIRST CAUSE OF ACTION
### (Breach of Contract)

106.    Plaintiff repeats and realleges the foregoing paragraphs as if alleged in full herein.

107.    Defendants entered into an agreement with Plaintiff in which Plaintiff agreed to provide online marketing and advertising services to Defendants in connection with Gray Harbor's participation as an affiliate for the Capital One Shopping browser extension.

108.    Specifically, Plaintiff would direct consumer traffic and downloads to the Capital One/Gray Harbor Affiliate Link which, in turn, would result in Defendants receiving a commission from Capital One for each consumer download.

109.    In consideration, for the consumers who downloaded the browser extension as a result of Plaintiff's services, Plaintiff was to receive ninety (90) percent of the commissions that Gray Harbor received from Capital One per download.

110.    Plaintiff performed the agreed upon services and generated a substantial amount of commissions to Defendants from Capital One each month.

111.    Each Defendant, especially Defendant Houck, personally benefitted from the services provided by Caerus Media, and, in turn, the commissions received from Capital One.

112.    Plaintiff duly invoiced Defendants for the online marketing and advertising services on a monthly basis and provided Defendants with precise data detailing the number of consumers that downloaded the browser extension as a result of Plaintiff's marketing services and the commissions due to Plaintiff.

113.    The agreement between the parties is valid and binding and resulted in a successful business relationship from on or around September 2022 until April of 2024, when Defendants stopped making payments due despite substantial sums due to Plaintiff continuing to accrue.

114.    To date, Defendants have failed and refused to pay the agreed upon payments for invoices dated between the months of April and July of 2024, with a balance of $680,958.20 outstanding.

115.    Plaintiff has suffered significant damages as a result of Defendants' actions.

116.    As a direct result of Defendants' breach of contract, Plaintiff has been damaged in an amount to be determined at trial, but not less than $680,958.20, plus interest, costs, and attorneys' fees.

**SECOND CAUSE OF ACTION**
**(Promissory Estoppel)**

17

117.    Plaintiff repeats and realleges the foregoing paragraphs as if alleged in full herein.

118.    Beginning around September 2022, the parties entered into an agreement wherein Defendants were to remit payment to Plaintiff for online marketing and advertising services to Defendants in connection with Gray Harbor's participation as an affiliate for the Capital One Shopping browser extension.

119.    Specifically, Plaintiff would direct consumer traffic and downloads to the Capital One/Gray Harbor Affiliate Link which, in turn, would result in Defendants receiving a commission from Capital One for each consumer download.

120.    Each Defendant, especially Defendant Houck, personally benefitted from the services provided by Caerus Media, and, in turn, the commissions received from Capital One.

121.    In exchange, for the consumers who downloaded the browser extension as a result of Plaintiff's services, Defendants were to remit ninety (90) percent of the commissions that Gray Harbor received from Capital One per download.

122.    Plaintiff invoiced Defendants on a monthly basis beginning around September 2022, and received the agreed upon payments until approximately April of 2024.

123.    Defendants failed to remit payments for the entire balances due on invoices between the months of April and July of 2024, with a balance of $680,958.20 outstanding.

124.    Defendants did not object to the amounts due or express dissatisfaction with the services provided by Plaintiff.

125.    Instead, between April and July of 2024, Defendants continuously represented that that payments due would be forthcoming in order to induce Plaintiff to continue providing online marketing and advertising services to it, which continued to generate a substantial amount of commissions from Capital One to Defendants.

126.    Plaintiff detrimentally relied on Defendants' promises and continued to provide them with lucrative marketing services until July of 2024, despite substantial amounts accruing since April of 2024.

127.    Moreover, in order to deter Plaintiff from initiating litigation against Defendants, between August and October of 2024, Defendants once again falsely represented that the entire balance of the outstanding amounts due would be shortly forthcoming.

128.    Plaintiff has suffered significant damages as a result of Defendants' actions.

129.    As a direct result of Defendants' refusal to pay Plaintiff for the online marketing and advertising services it provided and billed to Defendants, Plaintiff has been damaged in an amount to be determined at trial, but not less than $680,958.20, plus interest, costs, and attorneys' fees.

### THIRD CAUSE OF ACTION
### (Unjust Enrichment)

130.    Plaintiff repeats and realleges the foregoing paragraphs as if alleged in full herein.

131.    Plaintiff providing substantial and lucrative online marketing and advertising services to Defendants between the months of April and July of 2024, with the expectation that Defendants would pay the agreed upon amounts for such services.

132.    As a result of Plaintiff's services, Defendants received substantial commissions from Capital One for consumers who downloaded the Capital One Shopping browser extension.

133.    Each Defendant, especially Defendant Houck, personally benefitted from the services provided by Caerus Media, and, in turn, the commissions received from Capital One.

134.    For the consumers who downloaded the browser extension as a result of Plaintiff's marketing and advertising services, Defendants were required to pay Plaintiff ninety (90) percent of the commissions received from Capital One per download.

7576485v.2

135.    Defendants, however, have failed to pay the entire balances due for the months of April 2024 through to July of 2024, despite receiving commissions from Capital One for those months, with a balance of $680,958.20 outstanding.

136.    Defendants were enriched by their failure to pay Plaintiff for its online marketing and advertising services for the months of April through July of 2024.

137.    Defendants have no justification for their refusal to pay for Plaintiff's services.

138.    Plaintiff has suffered significant damages as a result of Defendants' actions.

139.    As a direct result of Defendants' refusal to pay Plaintiff for the online marketing and advertising services it provided and billed to Defendants, Plaintiff has been damaged in an amount to be determined at trial, but not less than $680,958.20, plus interest, costs, and attorneys' fees.

### FORTH CAUSE OF ACTION
### (Quantum Meruit)

140.    Plaintiff repeats and realleges the foregoing paragraphs as if alleged in full herein.

141.    Plaintiff provided substantial and lucrative online marketing and advertising services to Defendants between the months of April and July of 2024.

142.    As a result of Plaintiff's services, Defendants received substantial commissions from Capital One for consumers who downloaded the Capital One Shopping browser extension.

143.    Each Defendant, especially Defendant Houck, personally benefitted from the services provided by Caerus Media, and, in turn, the commissions received from Capital One.

144.    The parties agreed and understood that Defendants were to pay Plaintiff ninety (90) percent of the commissions received from Capital One, which were generated by Plaintiff's marketing and advertising services.

145.     Defendants, however, have failed to pay the entire balances due for the months of April 2024 through to July of 2024, with a balance of $680,958.20 outstanding.

146.     Principles of equity and good conscience require Defendants to pay Plaintiff for the online marketing and advertising services rendered.

147.     Plaintiff has suffered significant damages as a result of Defendants' actions.

148.     As a direct result of Defendants' refusal to pay Plaintiff for the online marketing and advertising services it provided and billed to Defendants, Plaintiff has been damaged in an amount to be determined at trial, but not less than $680,958.20, plus interest, costs, and attorneys' fees.

### FIFTH CAUSE OF ACTION
### (Account Stated)

149.     Plaintiff repeats and realleges the foregoing paragraphs as if alleged in full herein.

150.     Beginning around September 2022, the parties entered into an agreement wherein Defendants were to remit payment to Plaintiff for online marketing and advertising services to Defendants in connection with Gray Harbor's participation as an affiliate for the Capital One Shopping browser extension.

151.     Defendants were to remit  ninety (90) % of the commissions it received from Capital One to Plaintiff which resulted from Plaintiff's online and marketing services.

152.     Plaintiff invoiced Defendants on a monthly basis beginning around September 2022, and received the agreed upon payments until approximately April of 2024.

153.     Defendants failed to remit payments for the balances due on invoices dated between the months of April and July of 2024, with a balance of $680,958.20 outstanding

154.     Defendants did not object to the invoices submitted by Plaintiff between April and July of 2024.

7576485v.2

155.    Nor did Defendants express dissatisfaction with the services provided.

156.    In fact, after a threat of litigation, in August of 2024, Defendants made two more minimal payments to Plaintiff with continued promises and reassurances that the remainder of the outstanding balance would be paid shortly.

157.    Defendants promises, however, were false.

158.    Plaintiff has suffered significant damages as a result of Defendants' actions.

159.    As a direct result of Defendants' refusal to pay Plaintiff for the online marketing and advertising services it provided and billed to Defendants, Plaintiff has been damaged in an amount to be determined at trial, but not less than $680,958.20, plus interest, costs, and attorneys' fees.

## SIXTH CAUSE OF ACTION
### (Fraudulent Inducement)

160.    Plaintiff repeats and realleges the foregoing paragraphs as if alleged in full herein.

161.    Between April and July 2024, when Defendants began accruing a significant outstanding balance due to Plaintiff, Defendants represented, *inter alia,* that payment was delayed due to a lack of funds and would be forthcoming.

162.    Such representations, however, were false, and intended to induce Plaintiff to continue to provide Defendants with its lucrative marketing and advertising services so that Defendants could continue receiving substantial commissions from Capital One without providing Plaintiff with its agreed upon portion of the commissions.

163.    Rather, during this time frame, Defendants sold approximately $500,000 of its accounts receivables, consisting solely of commissions due from Capital One, to RDM, an outside entity, in exchange for receiving an immediate sum of $ 375,000.

164.    The accounts receivables sold to RDM included commissions from Capital One based upon Plaintiff's services, 90% of which were required to be remitted to Plaintiff.

165.    As such, it is clear that Defendants did not intend to remit the balance due to Plaintiff "shortly" as represented but rather aimed to continue to benefit from Plaintiff's services while it sold the accounts receivables due for Plaintiff's services and profited from the immediate lump sum payment they received from RDM.

166.    Moreover, despite asserting that a lack of funds was a reason for the delay in payment, Defendants notably did not make any attempt to make the payments due to Plaintiff upon receipt of the lump sum payment from RDM.

167.    At all relevant times, Defendants knew the representations made to Plaintiff were false.

168.    At all relevant times, Defendants intended that Plaintiff would rely on their false representations that payment of the outstanding amounts due would be forthcoming.

169.    Such promises were initially intended to induce Plaintiff to continue providing its lucrative marketing efforts to Defendants.

170.    Defendants representations concerning payment of the outstanding balances due being forthcoming were material to the business relationship and agreement of the parties.

171.    Plaintiff reasonably relied on Defendants' fraudulent representations.

172.    Plaintiff has suffered significant damages as a result of Defendants' actions.

173.    As a direct result of Defendants' fraudulent representations, Plaintiff has been damaged in an amount to be determined at trial, but not less than $680,958.20, plus interest, costs, and attorneys' fees.

7576485v.2

**SEVENTH CAUSE OF ACTION**
**(Fraudulent Transfer)**

174.    Plaintiff repeats and realleges the foregoing paragraphs as if alleged in full herein.

175.    Between April and July 2024, when Defendants began accruing a significant outstanding balance due to Plaintiff, Defendants falsely represented, *inter alia,* that payment was delayed due to a lack of funds and would be forthcoming.

176.    This continued until July of 2024, when Plaintiff reached its breaking point and was forced to threaten Defendants with litigation for the outstanding balance approximately $885,958.20 due at that time.

177.    Faced with the threat of litigation, in August of 2024, Defendants represented that they would resume making payments due to Caerus Media again and submit the remaining balance due by September 6, 2024.

178.    Such representations were false and made solely for the purpose of deterring Plaintiff from litigation while Defendant transferred assets from Gray Harbor in order to evade liability for breach of is contractual obligations and ultimately depleted Defendants' assets. N.J. Stat. § 25:2-26(d).

179.    For example, in July and August of 2024, Defendants transferred the proceeds of their accounts receivables to other persons or business entities related to Houck and/or owned by Houck.

180.    Moreover, around August of 2024, Defendants transferred not less than $246,000 to bank accounts held by Houck personally and other non-merchant bank accounts.

181.    Moreover, Defendants had received approximately $1.5 million in Capital One commissions between August and September of 2024, some of which were due for Plaintiff's services, and were more than enough to satisfy the outstanding debt to Plaintiff.

7576485v.2

182.     However, such funds were never remitted to Plaintiff.

183.     Additionally, Defendant Houck admitted that in July of 2024, right before his fraudulent representations to Plaintiff, he began discussing the dissolution of Gray Harbor with his attorneys due to the loss of his primary and/or sole customer, Capital One.

184.     According to Houck, shortly thereafter, Gray Harbor's assets had been completely depleted and the entity is currently no longer operational, existing only for the sole purpose of initiating litigation against Houck's business partner.

185.     As such, the entirety of Gray Harbor's assets were depleted to the point of insolvency and were transferred with the intent to hinder, delay, and defraud Plaintiff. N.J. Stat. § 25:2-25(a)(1).

186.     The transfers of Gray Harbor's assets were made without receiving reasonably equivalent value in exchange for the transfer. N.J. Stat. § 25:2-25(a)(2).

187.     Such a transfer of assets upon the threat of litigation, in combination with the false promises of payment, exhibits an indicia of fraud, as delineated under N.J. Stat. § 25:2-26(d).

188.     Further, the transfer of and/or removal or concealment of all of the debtor's assets such as here, likewise demonstrates an indicia of fraud under N.J. Stat. § 25:2-26(e) and N.J. Stat. § 25:2-26(g).

189.     Defendants did not receive any consideration for the transfer of Gray Harbor's assets.

190.     Gray Harbor became insolvent as a result thereof. N.J. Stat. § 25:2-26(i).

191.     Based on the allegations in the preceding paragraphs and pursuant to N.J. Stat. § 25:2-25 and N.J. Stat. § 25:2-27, the transfer made by Defendants were fraudulent.

7576485v.2

WHEREFORE, Plaintiff, Caerus Media LLC, demands judgment against Defendants, Gray Harbor Holdings L.L.C. d/b/a Gray Harbor Digital and/or d/b/a Gray Harbor Consulting, Gray Harbor Publishing LLC d/b/a Gray Harbor Digital and/or d/b/a Gray Harbor Consulting and Brett Houck, as follows:

(a) Enter judgment of Plaintiff Caerus Media on all causes of action set forth herein;

(b) Award damages in the principal amount of than $680,958.20, plus interest;

(c) Award reasonable attorneys' fees and costs incurred in connection with Caerus Media's enforcement of the agreement between the parties;

(d) And such other and further relief as the Court deems just and proper.

Dated: May 5, 2025

**STRADLEY RONON STEVENS & YOUNG LLP**

By: /s/ *Andrew I. Hamelsky*
Andrew I. Hamelsky, Esq.
Sabina Corrado, Esq.
1037 Raymond Blvd, Suite 920
Newark, NJ 07102
Phone:  (862) 682-7246
Email:  ahamelsky@stradley.com
*Attorneys for Plaintiff Caerus Media, LLC*

7576485v.2