**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

CAERUS MEDIA LLC,

    Plaintiff,

        v.

GRAY HARBOR HOLDINGS L.L.C, *et al.*,

    Defendants.

**Civil Action No.: 1:25-cv-01120 (ESK)**

**REPLY MEMORANDUM OF LAW
IN SUPPORT OF
<u>DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT</u>**

**WHITE AND WILLIAMS LLP**
Richard E. Miller (#017571998)
1650 Market Street
One Liberty Place, Suite 1800
Philadelphia, PA 19103
Phone: (215) 864-6834
millerr@whiteandwilliams.com

*Attorneys for Defendants*

Date: July 11, 2025

50369353v.3

**TABLE OF CONTENTS**

**Page(s)**

INTRODUCTION..................................................1

ARGUMENT......................................................5

1. The Statute of Frauds Bars Plaintiff's Contract Based Claims Against Defendant Houck............................5

2. Plaintiff's Fraud Induced "Continued Services" Argument Contravenes New Jersey Law.......................6

3. Defendants' Alleged Non-Disclosure of the RDM Loan Does Not Constitute Fraud................................7

   A. The RDM Transaction was an MCA Loan..................7

   B. Defendants Had No Legal Obligation to Disclose the RDM Loan to Plaintiff..........................10

4. Plaintiff Has Not Identified a Single Misappropriated or Fraudulently Transferred Asset.......................12

5. The Economic Loss Doctrine Bars The Fraudulent Inducement Claim........................................12

6. The Statutory Fraudulent Transfer Claim Fails as to Houck as Well...........................................14

CONCLUSION...................................................15

50369353v.3

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.*,
   226 F. Supp. 2d 557 (D.N.J. 2002) ......................2, 6, 13

*Howard M. Schoor Associates, Inc. v. Holmdel Heights
   Constr. Co.*,
   68 N.J. 95 (N.J. 1975) ........................................5

*In Re Watchmen Sec. LLC*,
   2024 Bankr. LEXIS 2871 (S.D. Ind. Bky. November 20,
   2024) ..........................................................9

*Ocean Cape Hotel Corp. v. Masefield Corp.*,
   63 N.J. Super. 369 (App. Div. 1960) ...........................6

*People v. Richmond Capital Group LLC*,
   2023 NYLJ LEXIS 2487 (N.Y. Sup. Ct. Sept. 15, 2023) ...........8

*Revenue Based Finance Coalition v. Consumer Financial
   Protection Bureau*,
   2025 U.S. Dist. LEXIS 28431 Case No. 1:23-cv-24882
   (S.D. Fla. Feb. 17, 2025) .....................................8

*Vita v. Vita*,
   2022 U.S. Dist. LEXIS 22208 (D.N.J 2022) ......................6

**STATUTES**

N.J. Stat. § 25:1-15............................................5

New Jersey Fraudulent Transfer Act..............................1

NJFTA........................................................4, 14

**OTHER AUTHORITIES**

Federal Rule 9(b)....................................1, 2, 4, 15

Pursuant to the Court's Briefing Schedule filed May 16, 2025, Defendants, Gray Harbor Holdings LLC ("Gray Harbor") and Brett Houck ("Houck"), submit this reply memorandum in support of their Motion to Dismiss ("Motion") portions of the Amended Complaint filed by Plaintiff, Caerus Media LLC ("Caerus").

## INTRODUCTION

Plaintiff's arguments in opposition to this Motion are not new. They would apply to every contract dispute in which a plaintiff attempts to make nonpayment of the contract debt into tortious conduct. As such, Plaintiff's arguments undermine, and are all in contravention, of New Jersey law and federal procedure. In short, if those arguments were sustained, the New Jersey Statute of Frauds, Federal Rule 9(b) and the economic loss doctrine would be rendered meaningless, as would portions of the New Jersey Fraudulent Transfer Act ("NJFTA").

With respect to the alleged verbal guaranty, the contract based claims (Counts 1-5) are clearly barred by the Statute of Frauds. Plaintiff's argument that this statute is inapplicable because Houck owns, and derived income from, the contracting party (Gray Harbor) is in contravention of New Jersey law.

Providing a guaranty of a contractual obligation of a company owned by the guarantor does not constitute a "leading objective", an exception to the statute. Why? Because if it did qualify as an exception, the Statute of Frauds would in large

50369353v.3

part be rendered meaningless. Many, many owners and officers of companies guaranty contractual obligations for the company. Counts 1 through 5 should therefore be dismissed as to Houck.

Plaintiff's fraud based claims (Counts 6 and 7) should be dismissed as to both Defendants. Plaintiff has not even attempted to comply with Rule 9(b), in large part because there is no fraudulent conduct alleged. Plaintiff's theory of fraudulent inducement is that a promise to pay accrued fees in the future induced *continued performance* of a services contract that it had been performing under for two years. This theory contravenes New Jersey law, which is that a promise to pay in the future is not sufficient to constitute a claim for fraud. Again, if Plaintiff's theory were sustained, every breach of a contract for continued services by nonpayment could be pled as a fraud. That is why the federal and state New Jersey cases that have permitted a fraudulent inducement claim to proceed along with a breach of contract claim generally involved a fraud in the inducement based on *pre-contractual misrepresentations*. *See Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.*, 226 F. Supp. 2d 557, 563-564 (D.N.J. 2002) (and list of cases cited therein). That is not what Plaintiff alleges. In short, fraudulent inducement is not established by inducing continued performance through promise of payment. Some other tortious act must have occurred.

-2-

Plaintiff claims that the "other" tortious conduct was the Defendants' failure to disclose a loan[1] Gray Harbor had from RDM (a merchant cash advance lender). But Gray Harbor had no contractual duty to disclose to Caerus - - an independent contractor service provider - - the manner in which Gray Harbor was financed or capitalized. No such duty exists at law, and Plaintiff has offered none.

Plaintiff's fraudulent inducement claim is also barred by the economic loss doctrine for similar reasons. There is no alleged conduct that is extraneous to the contract that gives rise to a tort claim. There was no duty to disclose the RDM loan. Nor does Plaintiff alleged damages flowing from the alleged fraudulent nondisclosure. Plaintiff alleges contract damages only.

Caerus also attempts to create another fraudulent act through its allegations that Defendants transferred "other [unidentified] assets". These nebulous allegations fail to support a claim of fraudulent inducement for the same or similar

---

[1] Plaintiff also attempts to create a duty of disclosure by characterizing the RDM loan as a sale of the specific receivables attributable to Caerus' marketing efforts; but that is a false characterization. As discussed herein, the transaction with RDM was a typical merchant cash advance loan, which is not tied to any particular receivable. *See Exhibit 1.* It is the same as a traditional loan collateralized by all of the assets of the borrower. Moreover, even if it was an actual sale of identifiable receivables, Defendants still had no legal obligation to disclose it, absent a contractual requirement.

-3-

reasons. Plaintiff fails to identify any of the "other assets", let alone plead how and when they were transferred. In addition, Caerus has no standing to assert a fraudulent inducement claim because there was no duty to inform Caerus of the unidentified transfers of unidentified other assets. No matter how Caerus characterizes its fraud claim, it is not extraneous to the contract, and it is barred by the economic loss doctrine.

The NJFTA claim (Count 7) fails as to both Defendants. (Plaintiff concedes that the claim fails as to Gray Harbor because it is not a *transferee*.) Contrary to Plaintiff's argument, the claim fails against Defendant Houck as well because the Amended Complaint lacks any specificity as to what was transferred, to whom and when. It fails to even identify the bank transfers to which it alludes; *and Caerus has Gray Harbor's bank statements*. Yet in two complaints Caerus has elected to not identify whatever transfers it is purportedly basing this claim upon. Rule 9(b) requires more.

In addition, a fraudulent transfer of unidentified assets in 2024 - - in which Plaintiff had no secured interest - - cannot be a legal cause of damages to Plaintiff. Caerus is simply an unsecured creditor and, therefore, has no standing to demand a monetary judgment in its favor for those alleged unidentified transfers of unidentified assets. Accordingly, Count 7 must also be dismissed as to both Defendants.

ARGUMENT

1. <u>The Statute of Frauds Bars Plaintiff's Contract Based Claims Against Defendant Houck</u>

Caerus argues that the Statute of Frauds does not bar its contract claims against Houck for enforcement of his alleged guaranty because it is alleged that Houck personally benefitted from the contractual relationship through the receipt of unidentified income from Gray Harbor in his capacity as the owner/officer of the company. That argument fails.

As Plaintiff admits, a verbal guaranty of payment for the debt of another is not enforceable under New Jersey law. The guaranty must be in writing. N.J. Stat. § 25:1-15. The exception to this law is if the *leading objective* in making the guaranty is to subserve a personal interest of the guarantor. But preservation of the value of one's ownership interest in the contracting party does **not** constitute a "leading objective" *Howard M. Schoor Associates, Inc. v. Holmdel Heights Constr. Co.*, 68 N.J. 95, 102 (N.J. 1975). Thus, the alleged fact that Houck received unidentified payments from Gray Harbor due to his ownership/employment interests does not qualify as a "leading objective" for the contract at issue. And Plaintiff offers no

-5-

legal support to the contrary.[2]

Therefore, Counts 1-5 must be dismissed as to Houck.

2. Plaintiff's Fraud Induced "Continued Services" Argument Contravenes New Jersey Law

Plaintiff does not contend that it was fraudulently induced to enter into the verbal contract *in 2022*, when the agreement was formed. Plaintiff contends that beginning in or about April 2024, Defendants' unspecified/unidentified promises to pay accrued fees ("make it whole") induced Caerus *to continue* to provide marketing services. This argument is in contravention of well-established New Jersey law.

It is long settled that pleading that a party failed to pay as promised is not sufficient to constitute a claim for fraud in the inducement. *Ocean Cape Hotel Corp. v. Masefield Corp.*, 63 N.J. Super. 369, 380-382 (App. Div. 1960);*see also Vita v. Vita*, 2022 U.S. Dist. LEXIS 22208, *13-14 (D.N.J 2022). New Jersey federal and state decisions that have permitted a fraudulent inducement claim to proceed with a breach of contract claim generally involve pre-contract misrepresentations. *See Bracco*

---

[2] Plaintiff claims that this case is "similar to *Howard M. Schoor Associates*." It is not. In *Howard M. Schoor Associates*, the court found, under the facts in that case, that the obligation to pay did not arise from a guaranty of the debt of another. It was a primary obligation to pay for the services rendered and, as such, was "outside the statute". The debtor at issue was found to be the primary obligor. *Id*. at 101-102. Here, Caerus is not contending that Houck was a primary obligor. Caerus contends that he is a verbal guarantor. Thus, the *Howard M. Schoor Associates* decision does not support Plaintiff's position.

-6-

*Diagnostics, Inc. v. Bergen Brunswig Drug Co.*, 226 F. Supp. 2d 557, 563-564 (D.N.J. 2002)(citing numerous cases).

In an effort to avoid this well settled law, Plaintiff argues that the unidentified alleged fraudulent promises to make it whole induced Caerus "to continue" to provide marketing services at some unidentified point in time.

In short, if the "continued performance" argument were sufficient to avoid the bar on a fraud claim being based on nonperformance, then virtually every contract claim could be pled as a fraud. That is not congruent with New Jersey law. That is why the New Jersey courts have concluded that something more than nonpayment is needed to successfully plead a fraudulent inducement claim. The Amended Complaint does not plead it.

    3.    Defendants' Alleged Non-Disclosure of the RDM Loan Does Not Constitute Fraud

Plaintiff argues that Defendants' committed fraud by failing to disclose a loan Gray Harbor had from RDM Capital Funding, LLC DBA FinTap ("RDM"). That argument is meritless, and premised on a mischaracterization of the otherwise irrelevant transaction (which was a merchant cash advance ("MCA") loan).

    A.    The RDM Transaction was an MCA Loan

MCA lending is a type of financing typically made to small businesses. MCA lending often exceeds the maximum legal rate of interest permitted under state usury laws. In an effort to avoid

these usury laws, the MCA industry makes loans that purport to be a sale of an asset - - that asset being unspecified and unidentified future receivables. The loans are papered this way because many state usury laws did not apply to asset sales.

Many MCA lenders are based in New York; therefore, much of the MCA case law has come from the New York courts. Early on, the New York state courts pretty much exempted MCA loans from the usury laws because the loan agreement stated that it was for the sale of an "asset" (i.e., an interest in unspecified future receivables). The courts gave no consideration to the reality that the MCA agreements operated like a loan in all material respects. Then, around the time of the New York Attorney General's crackdown on predatory MCA lenders in June 2020, *see People v. Richmond Capital Group LLC*, 2023 NYLJ LEXIS 2487 (N.Y. Sup. Ct. Sept. 15, 2023), the New York courts started analyzing these transactions and declaring them to be usurious loans that were *void ab initio*.[3]

Most recently, at least two federal courts have rejected in whole the concept that an interest in an unidentified future receivable could be sold as an asset; finding that the transaction

---

[3] A non-exhaustive list of cases analyzing MCA lending is attached as Exhibit 2. These decisions are based on a review of the terms and manner in which the MCA agreement actually operated (such as whether there was recourse in the event of default). Based on the specific terms of each purported "sale of future receivables", these courts concluded that the transaction operated as a loan and was subject to usury laws, notwithstanding the "sale of receivables" terminology in the MCA agreement.

-8-

is nothing more than a loan. This is because there is no legal inception for such a "sale". *See Revenue Based Finance Coalition v. Consumer Financial Protection Bureau*, 2025 U.S. Dist. LEXIS 28431 Case No. 1:23-cv-24882 at p. 19 (S.D. Fla. Feb. 17, 2025)("the reality is that an MCA agreement is not a sale of an existing asset or property interest. A merchant cannot sell—and another cannot buy—all right, title, and interest in something which does not yet exist (that is, future sales revenues hoped to be received from as-yet-unknown parties in unknown future transactions that may never transpire)"); *In Re Watchmen Sec. LLC*, 2024 Bankr. LEXIS 2871 at pp. 10-11 (S.D. Ind. Bky. November 20, 2024) ("To begin with, the type of transaction at issue in the Cornerstone cases — a putative present sale of rights to payment that do not yet exist (or, more accurately, of an undivided share of such nonexistent rights) — is both a metaphysical and legal impossibility. . . . . . The law simply does not comprehend or countenance a present transfer of future property.").

Gray Harbor's transaction with RDM was a typical usurious MCA loan. Attached as Exhibit 1 is the RDM agreement. Per its terms, RDM loaned Gray Harbor approximately $361,000. Gray Harbor was to repay RDM a total of $521,250 over a period of 44 weeks. This equates to an effective interest rate in excess of 50% per annum. This loan is also collateralized with a security

-9-

interest in all of Gray Harbor's bank accounts, which of course would hold any future receivables paid.

Plaintiff's characterization of the RDM transaction as anything other than a loan is, therefore, incorrect.

### B. Defendants Had No Legal Obligation to Disclose the RDM Loan to Plaintiff

Although Caerus repeatedly claims it was defrauded by the failure to disclose the RDM loan, it offers legal basis to support its premise that Defendants had any obligation to disclose it.

Caerus was one of several independent contractors that provided services to Gray Harbor.[4] Caerus, like all other creditors, was to be paid by Gray Harbor from its revenues. Gray Harbor financed its operations through loans and cash flow. As Caerus was well aware, Gray Harbor had several lenders, one of which being RDM.

There is nothing fraudulent about Gray Harbor not disclosing to an independent contractor that it was obtaining financing from a third party lender while also maintaining it agreement with Caerus for marketing services. All of its creditors logically expected to be repaid from the payment of

---

[4] Indeed, Gray Harbor also received marketing services from a company called Deadlock, *which is owned by the same person that owns Caerus*. Deadlock was paid in full for the services it provided.

Gray Harbors' future receivables, for that is the income on which it operates. Absent a contractual obligation, there was no legal obligation to inform Caerus as to how Grays Harbor was financed or the terms of that financing. Absent a contractual requirement, the failure to disclose in May 2024 the existence or terms of the RDM loan cannot constitute evidence of fraudulent inducement, as a matter of law.

Finally, Plaintiff's implication that the MCA loan applied specifically to the funds derived from Caerus' services is false. RDM had no legal right to the income derived specifically from services provided by Caerus (i.e., the payments from Capital One). RDM was entitled to be treated like any other secured lender with respect to all of Gray Harbor's accounts. The concept espoused by Plaintiff - - that the existence of the RDM loan meant that Caerus could not be paid for its services - - is factually and legally false. Plaintiff's fraudulent inducement claim, therefore, fails as a matter of law.

In short, under New Jersey law, Plaintiff must allege something more than it did not get paid as promised in order to articulate a fraudulent inducement claim. And it must plead that fraud with specificity. Plaintiff has failed to do either and Count 6 must, therefore, be dismissed as to all Defendants.

4.  **Plaintiff Has Not Identified a Single <u>Misappropriated or Fraudulently Transferred Asset</u>**

Although the Amended Complaint (and Plaintiff's Brief) are replete with nebulous allegations of misappropriated or fraudulently transferred assets, not a single transfer or asset is identified. Caerus has Gray Harbor's bank account statements; yet has failed twice now to plead the transactions that it claims to be illicit. That is because there is nothing illicit about these transactions, and to specifically identify or discuss them would defeat Plaintiff's legal theory. Caerus' intentional failure to specify what it is alleging to have been misappropriated by whom and when is further reason to dismiss the Amended Complaint for lack of specificity.

5.  **The Economic Loss Doctrine Bars <u>The Fraudulent Inducement Claim</u>**

Plaintiff's argument regarding the economic loss doctrine's bar of its fraud claim is a disjointed repetition of the flawed arguments previously raised. Caerus initially references the "sale of accounts receivable" as somehow being relevant to the application of this doctrine. It is not. First, there was no "sale" of receivables. RDM loaned money to Gray Harbor, secured by a security interest in all of Gray Harbor's accounts. The amount of the weekly repayment of that debt was purportedly based on an estimate of future receivables. *See* Ex. 1. RDM was to be paid from Gray Harbor's cash flow; the same as every other

-12-

creditor of the company. As discussed above, this does not constitute a "sale" of receivables. If there had been a sale, Gray Harbor would have no right to collect the receivables when paid, because RDM would own them. The RDM transaction simply is a loan secured by all assets, including revenues from receivables.

Second, there was no fraud with respect to the RDM loan. Gray Harbor had no legal duty to disclose to Caerus how it finances its business or its debt structure. If Caerus wanted to receive that information, it should have required disclosure its contract with Gray Harbor. It did not, and there is no legal basis for now incorporating such a requirement in the contract after the fact.

Third, the damages sought by Caerus flow from the alleged breach of the contract, not the alleged nondisclosure. As such, Plaintiff is prohibited from recovering in tort economic losses to which its entitlement flows from the contract. *Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.*, 226 F. Supp. 2d 557 (D.N.J. 2002).

Caerus next contends that Defendants transferred "other [unidentified] assets" for purposes of defrauding Plaintiff. This argument fails for the same or similar reasons. First, no "other assets" are identified, let alone how and when they were transferred. Second, even if "other assets" were transferred,

-13-

Caerus has no standing to assert a fraud claim when there was no duty to inform Caerus of the transfer. Third, Caerus is not asserting any damages arising from the transfer of "other assets". Its damages arise from the failure to pay under the contract. So no matter how Caerus characterizes its fraud claim, it is not extraneous to the contract.

Finally, Caerus argues that even if its fraudulent inducement claims are barred as to Gray Harbor, they are not barred as to Houck. This makes no sense. If Gray Harbor had no duty to inform Caerus of the RDM loan, Houck certainly did not have a duty. And no matter what duties exist under the law, the fraud claims are not extraneous from the contract claims. There is factual basis alleged for finding liability of Houck alone. This argument, therefore, lacks any merit.

### 6. The Statutory Fraudulent Transfer Claim Fails as to Houck as Well

Count 7 (violation of the NJFTA) is asserted against both Defendants. In its brief, Plaintiff concedes that the claim fails as to Gray Harbor because the company is not a *transferee*. But Plaintiff argues that the claim should proceed against Houck because he is alleged to be a *transferee*.

While in one sentence Caerus alleges Houck to be a *transferee*, the Amended Complaint lacks any specificity as to what was transferred and when. Count 7 alleges that "in July and

-14-

August of 2024, *Defendants* transferred the proceeds of their accounts receivables to other persons or business entities *related to Houck and/or owned by Houck*." (AC at ¶ 179 (emphasis added).) That is not a transfer to Houck personally. It also alleges that "around August of 2024, Defendants transferred not less than $246,000 to bank accounts *held by Houck personally and other non-merchant bank accounts*." (AC at ¶ 180 (emphasis added).) This may allege transfers to Houck, but fails to provide any specificity regarding the transfers.

It bears repeating - - *Caerus has Gray Harbor's bank statements*. Yet in two complaints it has elected to not identify whatever transfers it is referring to for this Count. This claim clearly lacks the specificity required under Rule 9(b).

## CONCLUSION

For the reasons discussed above, Defendants' Motion to Dismiss should be granted. Counts 6 and 7 should be dismissed with prejudice as to all Defendants, and Counts 1 through 5 should be dismissed as to Defendant Houck.

Dated: July 11, 2025

WHITE AND WILLIAMS

*/s/Richard Miller*
Richard E. Miller

-15-